IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 19-cv-01232-LTB

ERIC RICHTER,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,

    Defendant.

---

# ORDER

---

This case is before me on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss [Doc # 12]. After consideration of the motion, all related pleadings, and the case file, I grant Wells Fargo's motion in part and deny it in part as set forth below.

## I. Background

In this action, Plaintiff Eric Richter asserts a single claim against Wells Fargo for violation of the Colorado Wage Claim Act based on Wells Fargo's alleged failure to pay quarterly and annual bonuses owed to him. Specifically, Mr. Richter alleges that he was placed on administrative leave from his position with Wells Fargo as market sales force vice president from July 2018 until November 11, 2018 when he was terminated for "Sales Misconduct" as a result of an investigation conducted while he was on leave. During this time frame, Mr. Richter alleges that Wells Fargo failed to pay him three quarterly bonuses totaling $75,000 and an annual bonus of $20,000 to which he was entitled. As additional damages, Mr. Richter seeks penalties under the Wage Claim Act, costs, and reasonable attorneys fees.

## II. Standard of Review

In support of its motion, Wells Fargo relies on the terms of its 2018 Retail Sales Management Incentive Compensation Plan ("the Plan") which was neither attached to nor specifically cited in Mr. Richter's Complaint and Jury Demand. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must generally be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Here, however, the Plan is central to Mr. Richter's claim under the Wage Claim Act and is referenced in his response to Wells Fargo's motion. Furthermore, Mr. Richter does not argue for application of the summary judgment standard to Wells Fargo's motion or dispute the authenticity of the copy of the Plan provided by Wells Fargo. Under these circumstances, I conclude that I may consider the Plan without converting Well's Fargo's motion to one for summary judgment. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997) (where letter submitted by defendant was indisputably authentic and central to plaintiff's breach of contract claim, district court properly considered it as not "outside the pleading"). I therefore apply the standard of review applicable to motions to dismiss under Rule 12(b)(6).

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Although plaintiffs need not provide "detailed factual allegations" to survive a motion to dismiss, they must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Iqbal,* 556 U.S. at 678 (a complaint will not suffice if it tenders "naked assertions devoid of further factual enhancement").

### III. Analysis

The Plan provides as follows:

> A Formulaic Incentive Award will be deemed "Earned" under the Plan when all of the terms and conditions under the Plan have been satisfied with respect to an Award, including: (a) a determination that all of the Plan Qualifiers, Compliance with Laws and Governance, Code of Conduct provisions described herein have been satisfied through the Award payment date; (b) the applicable Performance Period ends; (c) the amount of the Award is calculable and all applicable adjustments have been applied in accordance with the terms of the Plan; and (d) the Award is fully calculated.
>
> A Discretionary Incentive Award will be deemed "Earned" under the Plan when all of the terms and conditions under the Plan have been satisfied with respect to an Award, including: (a) a determination that all of the Plan Qualifiers, Compliance with Laws and Governance, and Code of Conduct provisions described herein have been satisfied through the Award payment date; (b) the applicable Performance Period ends; (c) performance against Annual Performance Objectives have gone through the appropriate review processes and recommendations have been approved by the Plan Administrator; and (d) the HRC has determined that the Corporate Performance Goal has been met and authorized the payment of Discretionary Incentive Awards, and if applicable, the form of payment.
>
> In addition, the Plan Administrator and/or Wells Fargo (subject to the authority of the Human Resources Committee of Wells Fargo's Board of Directors (the "HRC")) have the full discretionary authority to adjust or amend a Participant's incentive opportunity or incentive payout under the Plan at any time.

*See* Plan, pp. 7 & 19. A Formulaic Incentive Award is calculated on a quarterly basis and is the quarterly bonus referred to in Mr. Richter's Complaint. *See* Plan, p. 8. A Discretionary Incentive Award is calculated on an annual basis and is the

annual bonus referred to in Mr. Richter's Complaint.  *Id.*

Wells Fargo first argues that Mr. Richter has failed to state a claim for payment of unpaid bonuses because he has failed to allege (1) that he met all of the Plan Qualifiers; (2) that he satisfied the Compliance with Laws and Governance and Code of Conduct provisions of the Plan; (3) that the relevant Formulaic Incentive Awards were calculable and calculated; and (4) that Wells Fargo in fact exercised its discretion to issue either type of award to him.  Implicit in Mr. Richter's allegations that Wells Fargo wrongfully withheld quarterly and annual bonuses to which he was entitled is that he met all prerequisites for the payment of these bonuses.  It is unnecessary for Mr. Richter to amend his complaint to delineate what those prerequisites are.

In addition, the Plan language quoted above does not establish the existence of a prerequisite that Wells Fargo exercise its discretion to award Mr. Richter the bonuses he claims.  Instead, this language addresses Wells Fargo's purported discretion not to award bonuses to which a Plan participant would otherwise be entitled.  Further analysis of the underlying facts and governing law is necessary to determine whether Wells Fargo properly exercised this discretion to deny payment of the bonuses claimed by Mr. Richter. Dismissal is therefore likewise not appropriate on the basis that it was within Wells Fargo's discretion not to pay Mr. Richter the bonuses at issue.

Wells Fargo next argues that the fact that it terminated Mr. Richter for "Sales Misconduct" definitively establishes that he did not satisfy the Compliance with Laws and Governance and Code of Conduct provisions of the Plan and was therefore not entitled to any of the bonuses he claims.  Mere use of the term "Sales Misconduct" as a basis for Mr. Richter's termination, however, fails to establish that he necessarily violated the specific language of these particular Plan provisions.

For instance, the Plan's Compliance with Laws and Governance provision provides, in part, that "[t]he determination and payment of an Award under the Plan is subject to the conditions and restrictions imposed under applicable laws, rules, and regulations." *See* Plan, p. 19. Without more supporting facts, it is impossible to determine if Mr. Richter's alleged unspecified "Sales Misconduct" violated any laws, rules, or regulations or any other specific provisions of the Plan's Laws and Governance and Code of Conduct provisions. Further development of the underlying facts is also necessary to determine whether Mr. Richter did in fact engage in "Sales Misconduct" since he alleges that he was never told the factual basis for Wells Fargo's investigation and subsequent termination of him and was not given an opportunity to refute the allegations against him. *See* Complaint, ¶¶ 8 & 9 & Response, p. 3.

As an alternative to the dismissal of Mr. Richter's Complaint in its entirety, Wells Fargo argues that it is at least entitled to the dismissal of his claim insofar as he seeks a quarterly bonus for the fourth quarter of 2018 or an annual bonus for that year. This argument is predicated on the fact that Mr. Richter's employment with Wells Fargo was undisputedly terminated on November 11, 2018, or before the last day of the fourth calendar quarter or calendar year. Wells Fargo contends that the Plan required that Mr. Richter be employed on December 31, 2018 in order to be eligible for a fourth quarter and annual bonus in 2018.

The Plan provides that a participant "must be in a Plan eligible role as of the last day of the Performance Period in order to be eligible for the Formulaic Incentive Award." Plan, p. 5, ¶ 3. The Plan defines "Performance Period" for the Formulaic Incentive Award as the "calendar quarter." *Id.* at p. 8. Under the terms of the Plan then, Mr. Richter, who does not directly challenge his termination, was not eligible for a fourth quarter bonus since he was not employed by Wells Fargo on

December 31, 2018.  The case law cited by Mr. Richter does not dictate a contrary conclusion.  *See Barnes v. Van Schaack,* 787 P.2d 207, 210 (Colo. App. 1990) (incentive agreement providing that plaintiff, a loan originator, was not entitled to commissions on loans that closed after his employment terminated was not void under Wage Claim Act); *Rohr v. Ted Neiters Motors, Co.,* 758 P.2d 186, 189 (Colo App. 1988) (bonus was earned as of the date of termination even though not due and payable until months later).

There does not appear to be a comparable Plan provision with respect to annual bonuses.  Instead, the Plan provides that Plan Participants must be employed by Wells Fargo on the annual bonus payment date in order to be eligible to receive it.  Plan, p. 5, ¶ 6.  It is unclear what the annual bonus payment date was for 2018 of whether this provision is enforceable in any event.  *See Rohr, supra.*  Under the current status of the case then, Wells Fargo is not entitled to the dismissal of Mr. Richter's claim that he was entitled to an annual bonus in 2018.

Finally, Wells Fargo argues that Mr. Richter has not made any factual allegations to plausibly suggest that Wells Fargo "willfully" failed to pay him wages and is therefore not entitled to increased penalties under C.R.S. § 8-4-109(c)(3). Mr. Richter's Complaint alleges that he was not informed of why he was placed on administrative leave or the grounds for his termination in November of 2018. Complaint, ¶¶ 7 & 8. Mr. Richter expounds on these allegations in his response to Wells' Fargo's motion and argues that the surrounding circumstances support an inference that Wells Fargo purposefully terminated him to avoid paying him compensation he was owed.  Mr. Richter's Complaint further alleges that Wells Fargo did not remit the wages he alleges are due despite two demands that it do so. *Id.* at ¶ 13.  These allegations are sufficient to plausibly demonstrate willful conduct by Wells Fargo.

IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. Wells Fargo's Motion to Dismiss [Doc # 12] is GRANTED IN PART and DENIED IN PART; and

2. Mr. Richter's claim against Wells Fargo is dismissed only insofar as it seeks payment of a fourth quarter bonus for 2018 and related penalties.

Dated: September 27, 2019 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE